# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SHERRYL STERLING,**

        **Plaintiff,**

v.                                        Case No: 6:24-cv-1029-PGB-LHP

**NATIONSTAR MORTGAGE LLC,**

        **Defendant.**

_____/

## ORDER

This cause comes before the Court on Defendant Nationstar Mortgage LLC's ("**Defendant**") Motion to Dismiss Counts I, II, III, and VIII of Plaintiff's Complaint. (Doc. 36 (the "**Motion**")). Plaintiff Sherryl Sterling ("**Plaintiff**") has responded in opposition. (Doc. 39 (the "**Response**")). Further, Plaintiff has filed a Notice of Supplemental Authority. (Doc. 41). Upon consideration, the Motion is due to be denied in part and found as moot in part.[1]

## I.   BACKGROUND[2]

Through this action, Plaintiff alleges that Defendant has violated the statutory provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. §§

---

[1] In the Response, Plaintiff states that she seeks to withdraw her claims in Count VIII against Defendant. The Court therefore does not discuss Count VIII herein. Instead, the Court dismisses the claims against Defendant in Count VIII without prejudice and finds Defendant's arguments as to this count to be moot.

[2] This account of the facts comes from Plaintiff's Complaint. (Doc. 1 (the "**Complaint**")). The Court accepts well-pled factual allegations as true when considering motions to dismiss. *Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

2601–2617 ("**RESPA**"), as well as its associated regulations, 21 C.F.R. §§ 1024.1–1024.41 ("**Regulation X**"). (Doc. 1).

Plaintiff owns real property located in Orlando, Florida (the "**Home**"), which serves as her primary place of residence. (*Id.* ¶¶ 1–2). Plaintiff acquired the Home after its prior owner, Erasmue Brown ("**Brown**"), passed away in January of 2020. (*Id.* ¶ 25). Brown had obtained the promissory note on the Home and the mortgage that secured it (collectively, the "**Loan**"). (*See id.* ¶¶ 3, 24). Defendant was the servicer on the Loan from March 1, 2019, to January 22, 2024. (*Id.* ¶ 5). Former Defendant Selene Finance LP ("**Selene**") has been the servicer on the Loan since January 23, 2024.[3] (*Id.* ¶ 7).

Upon Brown's death, Plaintiff was named personal representative of Brown's estate. (*Id.* ¶ 26). Two months later, Plaintiff lost her job due to the COVID-19 pandemic and thereafter accepted Defendant's offer to place the Loan in forbearance. (*Id.* ¶ 27). The Loan remained in forbearance until July 2021. (*Id.* ¶ 28). When Plaintiff secured a new job in April 2021, she contacted Defendant to "enter into a permanent loan modification and to bring the Loan current." (*Id.* ¶ 29). Defendant confirmed Plaintiff was the successor in interest on the Loan and permitted her to assume the payments for the Loan. (*Id.* ¶ 30). Moreover, "[o]n multiple occasions, [Defendant] approved [Plaintiff] for an assumption of the Loan along with a permanent modification." (*Id.* ¶ 31). Defendant thus sent assumption

---

[3] On December 5, 2024, the Court was notified that Plaintiff's claims against Selene had been resolved. (Doc. 42). Accordingly, the only operative counts of the Complaint are those containing Plaintiff's claims against Defendant as described herein.

and modification documents (the "**Loan Modification Agreement(s)**") for Plaintiff to execute on at least six different occasions.[4] (*Id.* ¶ 32). On each such occasion, Plaintiff executed the Loan Modification Agreement before a notary and returned it to Defendant. (*Id.* ¶ 33).

However, on October 17, 2023, Defendant sent Plaintiff a letter stating, in relevant part:

> You were previously offered a permanent Loan Modification. The terms of the Loan Modification Agreement required that you remit all copies of the agreement properly signed and notarized, if required, by all borrowers within the time allowed. **Unfortunately, we must withdraw the agreement offered because we did not receive the properly executed copies as required**. This means that your loan terms will not be modified, and your loan may be in default.

(*Id.* ¶ 55; Doc. 1-8 (the "**Purported Withdrawal Letter**") (emphasis added)).[5] Plaintiff thus avers that Defendant inexplicably "refused to implement an assumption and permanent modification of the Loan." (Doc. 1, ¶ 35). Further, in the ensuing months, Defendant sent Plaintiff correspondence wrongfully claiming that she was in default on the Loan and misrepresenting the amount of money that she owed.[6] (*Id.* ¶ 36).

---

[4] Plaintiff alleges that, at a minimum, Defendant sent Plaintiff Loan Modification Agreements to execute on April 28, 2022; May 25, 2022; July 28, 2023; August 7, 2023; August 21, 2023; and September 5, 2023. (Doc. 1, ¶ 32).

[5] After sending the Purported Withdrawal Letter, in January 2024, Defendant stated that it would mail another Loan Modification Agreement for Plaintiff to execute, but Plaintiff never received this document. (*Id.* ¶ 34).

[6] Defendant sent such correspondence in November 2023, December 2023, and February 2024. (*Id.* ¶ 36).

As a result of the foregoing, Plaintiff retained counsel. (*Id.* ¶ 40). On January 18, 2024, Plaintiff's counsel sent a letter to Defendant (Doc. 1-3 (the "**January Letter**")), which Plaintiff avers contained a notice of error under 12 C.F.R. § 1024.35 and requests for information under 12 C.F.R. § 1024.36. (Doc. 1-3; Doc. 1, ¶ 42). In Plaintiff's notice of error ("**NOE #1**"), Plaintiff notified Defendant of its errors in repeatedly failing to implement a permanent loan modification agreement. (Doc. 1-3, pp. 2–4). In Plaintiff's request for information ("**RFI #1**"), Plaintiff asked Defendant to provide the following information:

1. Copies of all **assumption and modification agreements** executed by [Plaintiff] and received by [Defendant] since August 1, 2021;

2. A copy of any communications, recordings of conversations, or communications logs concerning communications between [Defendant] and [Plaintiff] since August 1, 2021, specifically related to [Plaintiff's] attempts at executing any **loss mitigation [7] or assumption agreements** and otherwise concerning the Modification or disputes regarding the same;

3. Identify, in detail, any deficiencies in the execution of acceptance of any **assumption and modification agreements** executed by [Plaintiff] and received by [Defendant] since August 1, 2021 and describe, in detail, any attempts by [Defendant] to rectify such delinquencies; and,

4. A copy of any correspondence between [Defendant] and the Borrower and/or [Plaintiff] since August 1, 2021, specifically related to attempts at **loss mitigation and otherwise concerning loss mitigation attempts** or disputes regarding either of the same concerning the Loan.

---

[7] For clarity, a loss mitigation application is a request by the borrower to the mortgage loan servicer for "an alternative to foreclosure." 12 C.F.R. § 1024.31. Accordingly, a request to modify a mortgage loan agreement can serve as a loss mitigation application. *See id.*

4

(*Id.* at p. 4 (emphases added)). Defendant sent two letters in response to Plaintiff's January Letter. (Docs. 1-4, 1-5 (collectively, the "**January Responses**")). However, Defendant's January Responses "wholly failed to address" Plaintiff's NOE #1 regarding Defendant's repeated failure to implement a permanent loan modification. (Doc. 1, ¶ 48). Additionally, Defendant "failed to provide all of the information requested" in RFI #1. (*Id.*).

Believing Defendant's January Responses to be legally deficient, on April 11, 2024, Plaintiff sent a second letter to Defendant (Doc. 1-6 (the "**April Letter**")), which Plaintiff avers contained a new notice of error under 12 C.F.R. § 1024.35. In the notice of error ("**NOE #2**"), Plaintiff asserted Defendant had erred by failing to properly respond to NOE #1 and RFI #1. (Doc. 1, ¶ 50). In the April Letter, Plaintiff also resubmitted NOE #1 and RFI #1. (*Id.*). On May 16, 2024, Defendant responded to the April Letter. (*Id.* ¶ 52; Doc. 1-7). Therein, Defendant admitted it had received four Loan Modification Agreements executed by Plaintiff. (Doc. 1, ¶ 53; Doc. 1-7, p. 2). However, Defendant "vaguely state[d]" that the Loan Modification Agreements "were not properly executed," resulting in Defendant sending the Purported Withdrawal Letter. (Doc. 1, ¶ 53 (quoting Doc. 1-7, p. 2)). Defendant also stated that the April Letter raised issues that were "duplicative" of Plaintiff's January Letter and thus enclosed a copy of Defendant's January Responses. (Doc. 1-7, p. 2).

Defendant never implemented a permanent modification of the Loan. (Doc. 1, ¶ 72). Ultimately, in the midst of the foregoing correspondence between the parties, the owner of the Loan filed a foreclosure action as to the Home. (*Id.* ¶ 39).

Thus, on June 4, 2024, Plaintiff filed the instant action. Relevant here are three counts against Defendant, including for: (1) violations of 12 C.F.R. § 1024.41(d) and 12 U.S.C. § 2605(k) for providing improper denials of Plaintiff's requests for permanent loan modification (Count I); (2) violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k) for providing deficient responses to RFI #1 (Count II); and (3) violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) for failing to properly respond to Plaintiff's NOE #1 and NOE #2 (Count III). (Doc. 1, ¶¶ 81–139). In the Motion, Defendant seeks to dismiss each of these counts pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] (Doc. 36).

## II.   LEGAL STANDARD

### A.   Motions to Dismiss under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

---

[8]   In the body of the Motion, Defendant additionally asks the Court to take judicial notice of an exhibit to Plaintiff's Complaint. (Doc. 36, p. 4). However, as Defendant notes in the Motion, the Court is already permitted to consider exhibits to a plaintiff's complaint in ruling on a motion to dismiss for failure to state a claim. (*Id.* at p. 5 (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)). As a result, the additional step of judicially noticing the exhibit is not necessary, and Defendant's request that the Court do so is denied.

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

B. **RESPA and Regulation X**

RESPA is a consumer protection statute that was enacted for the benefit of mortgage borrowers ("**borrower(s)**"). *Renfroe v. Nationstar Mortg., LLC*, 822

7

F.3d 1241, 1242 (11th Cir. 2016). Given its consumer protection purpose, the Eleventh Circuit has highlighted that RESPA's provisions "should be construed liberally in order to best serve Congress's intent." *Id.* at 1244 (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998)).

Importantly, § 2605(k)(1)(E) of RESPA "contains a delegating provision mandating [a mortgage loan servicer's ("**servicer(s)**")] compliance with 'any other obligation found by the Bureau of Consumer Protection,[9] by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.'" *Simmonds v. Nationstar Mortg. LLC*, No. 5:23-cv-2-MW/MJF, 2024 U.S. Dist. LEXIS 187028, at *6 (N.D. Fla. Sept. 24, 2024) (first quoting § 2605(k)(1)(E); and then citing *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 980 (11th Cir. 2017) ("RESPA requires servicers to comply with the obligations specified in 12 U.S.C. § 2605 as well as any regulations issued to carry out the statute's purposes."))[10] In 2014, the CFPB enacted Regulation X as RESPA's "primary implementing legislation." *Berene v. Nationstar Mortg., LLC*, 800 F. App'x 756, 760 (11th Cir. 2020); *Simmonds*, 2024 U.S. Dist. LEXIS 187028, at *6.

---

[9] Because this body is more commonly known as the Consumer Financial Protection Bureau, the Court will refer to this body as the "CFPB" herein.

[10] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

8

## III. DISCUSSION

### A. Count I

In Count I, Plaintiff alleges that Defendant has violated § 1024.41(d) of Regulation X and, consequently, has also violated § 2605(k) of RESPA. (Doc. 1, ¶¶ 81–92). § 1024.41(d) governs a servicer's denial of a borrower's loan modification application. It states:

> (d) Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section **the specific reason or reasons for the servicer's determination** for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

§ 1024.41(d) (emphasis added). Plaintiff alleges that Defendant's Purported Withdrawal Letter was, in fact, a denial of Plaintiff's loan modification application. (Doc. 1, ¶ 85). Plaintiff also avers that "on information and belief, [Defendant] sent additional denial letters" concerning the multiple Loan Modification Agreements executed by Plaintiff. (*Id.*). Plaintiff contends that each such denial was deficient under § 1024.41(d), as, although Defendant has represented that it "did not receive the properly executed copies" of the Loan Modification Agreements, Defendant never provided the specific reasons for this determination. (*Id.* ¶ 86).

Defendant's sole argument for the dismissal of Count I is that Defendant never "denied" any permanent loan modification application by Plaintiff. (Doc. 36, p. 12). Instead, Defendant posits that it offered Plaintiff a permanent loan modification and then simply withdrew the offer. (*Id.*). The Court finds this to be

9

a distinction without a difference, particularly considering the circumstances here. Accepting Defendant's argument would empower mortgage servicers to completely avoid the dictates of § 1024.41(d) by accepting every loan modification application they receive from borrowers only to immediately withdraw such acceptance. As such, Defendant's proposed interpretation of § 1024.41(d) would lead to absurd results. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1175 (11th Cir. 2003) ("[E]ven the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent[; thus,] courts may reach results inconsistent with the plain meaning of a statute if giving the words . . . their plain and ordinary meaning produces a result that is . . . clearly absurd." (internal citations and quotation marks omitted)).[11]

In any event, Defendant fails to cite any legal authority to support its interpretation of § 1024.41(d). Consequently, this argument has been waived. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). As a result, Defendant's request that the Court dismiss Count I is denied.

---

[11] "We apply the canons of statutory construction to regulations as well as to statutes." *Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2010) (citing *Miami Heart Inst. v. Sullivan*, 868 F.2d 410, 413 (11th Cir. 1989)).

### B. Counts II and III

Through Counts II and III, Plaintiff alleges Defendant's responses to NOE #1, NOE #2, and RFI #1 were legally deficient under Regulation X and, correspondingly, under RESPA. *See* 12 C.F.R. §§ 1024.35 (governing notices of error ("**NOE(s)**")), 1024.36 (governing requests for information ("**RFI(s)**")); 12 U.S.C. § 2605(k)(1)(E) (making a servicer's failure to comply with regulations promulgated by the CFPB "to carry out the consumer protection purposes of this chapter" a violation of RESPA).

Of the arguments raised by Defendant for dismissal of Counts II and III, only one such argument is worthy of discussion. Therein, Defendant asserts that Plaintiff's NOEs and RFI did not trigger its duties to respond because they did not pertain to its "servicing" of Plaintiff's Loan. (Doc. 36, pp. 7–11). Defendant points to § 2605(e) of RESPA in support of this argument. (*Id.*). At the time that Regulation X was implemented, § 2605(e) already contained a mechanism enabling borrowers to send formal written requests for information called qualified written requests ("**QWR(s)**") to their servicers. (*See* Doc. 36, p. 6). Importantly, QWRs enable a borrower to seek "information relating to the *servicing* of" a borrower's loan. § 2605(e)(1)(A) (emphasis added). § 2605(i)(3) provides the relevant definition of "servicing":

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

11

Further, § 2605(e) imposes a duty upon servicers to respond to QWRs and provides specific parameters for what constitutes a proper and timely response.

When Regulation X was implemented, it contained additional provisions enabling borrowers to contact their servicers about their loans, including by sending NOEs and RFIs. 12 C.F.R. §§ 1024.35 (NOEs), 1024.36 (RFIs). As to RFI's, § 1024.36 states, in relevant part:

> (a)   Information request. **A servicer shall comply with the requirements of this section for any written request for information from a borrower that** includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and **states the information the borrower is requesting *with respect to the borrower's mortgage loan*. . . . A qualified written request that requests information *relating to the servicing* of the mortgage loan is a request for information for purposes of this section**, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

§ 1024.36(a) (emphasis added). As to NOEs, § 1024.35 states, in relevant part:

> (a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . **A qualified written request that asserts an error *relating to the servicing* of a mortgage loan is a notice of error for purposes of this section**, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

These provisions also provide detailed guidance regarding the proper time, manner, and content of servicers' responses to NOEs and RFIs. *See* §§ 1024.35(c)–(i), 1024.36(b)–(i).

In essence, Defendant argues that NOEs and RFIs are two specific ways to send QWRs, and they must therefore meet the requirements imposed upon QWRs to trigger a servicer's response duties. (Doc. 36, pp. 6–8). Thus, because Plaintiff's NOE #1, NOE #2, and RFI #1 pertained to loss mitigation rather than the "servicing" of Plaintiff's loan, Defendant asserts that they failed to trigger Defendant's response duties under RESPA and Regulation X. (*Id.*).

District courts in the Eleventh Circuit are divided on whether RFIs and NOEs provide independent avenues for obtaining information from servicers or are simply two types of QWRs. *Compare Simmonds*, 2024 U.S. Dist. LEXIS 187028, at *7 (collecting sources and finding that RFIs and NOEs are "two separate and additional methods of borrower inquiry"), *with Lopez v. Nationstar Mortg. LLC*, No. 1:20-cv-22496-KMM, 2021 WL 4990958, at *3–4 (S.D. Fla. Jan. 19, 2021) (holding that a NOE must meet the requirements imposed upon QWRs to trigger a servicer's response duties).

"The first rule in statutory construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute.'" *Shotz*, 344 F.3d at 1167 (quoting *United States v. Fisher*, 289 F.3d 1329, 1337–38 (11th Cir. 2002), *cert. denied,* 537 U.S. 1112 (2003)). When the plain language is clear, the court does not proceed to consider the legislative history, and simply applies the plain meaning of the provisions at issue. *See id*. This Court agrees with those courts holding that the plain language of RESPA and Regulation X supports a finding that NOEs and RFIs are separate and distinct from

13

QWRs. *E.g.*, *Simmonds*, 2024 U.S. Dist. LEXIS 187028, at \*7; *Pollock v. Seterus, Inc.*, No. 17-60475-Civ-Scola, 2017 U.S. Dist. LEXIS 202827, at \*8–11 (S.D. Fla. Dec. 11, 2017); *Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV, 2019 U.S. Dist. LEXIS 244643, at \*29–32 (S.D. Fla. June 18, 2019).

Under its plain language, § 1024.36(a) of Regulation X enables borrowers to send RFIs "with respect to the borrower's mortgage loan." However, RESPA's provision confines QWRs to requests for information specifically pertaining to servicing of the borrower's loan. *See* § 2605(e)(1)(A). The plain language of these provisions demonstrates that the CFBP intended to allow borrowers to seek a broader range of information through RFIs than they were previously able to seek using QWRs. *See, e.g.*, *Pollock*, 2017 U.S. Dist. LEXIS 202827, at \*8–10; *Simmonds*, 2024 U.S. Dist. LEXIS 187028, at \*10; *Lynch*, 2019 U.S. Dist. LEXIS 244643, at \*31–32. Moreover, in the same provision wherein the CFPB defined the broad scope of information that may be obtained through RFIs, the CFPB used different language to describe the narrower scope of information that may be obtained through QWRs. § 1024.36(a) (defining an RFI as requesting information "with respect to the borrower's mortgage loan," then noting that a QWR "that requests information relating to the servicing of the mortgage loan" is also considered an RFI). The direct juxtaposition of the scope of RFIs with QWRs and the use of different language to describe the scope of each supports the notion that RFIs provide a distinct method of inquiry from QWRs.

Similarly, §§ 1024.35 and 1024.36 each clearly state that certain QWRs can constitute RFIs or NOEs and note that servicers' responses to such QWRs must satisfy the dictates of §§ 1024.35 (for NOEs) and 1024.36 (for RFIs). Curiously absent from these provisions, if the CFPB had intended it, is any indication that the converse is true. *See Lynch*, 2019 U.S. Dist. LEXIS 244643, at *32 ("[S]imply put, all QWRs are RFIs but not all RFIs are QWRs.").

The Court therefore finds that the plain language of Regulation X and RESPA supports a finding that NOEs and RFIs need not comply with the requirements imposed upon QWRs. The Court further notes that such a finding supports RESPA's consumer protection purpose and the Eleventh Circuit's instruction that RESPA's provisions are to be liberally construed to protect mortgage loan borrowers. *See Renfroe*, 822 F.3d at 1244.

As a result of the foregoing, Defendant's request that the Court dismiss Counts II and III are denied.

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Counts I, II, III, and VIII of Plaintiff's Complaint (Doc. 36) is **DENIED IN PART** and **FOUND AS MOOT IN PART**.

2. Plaintiff's claims against Defendant Nationstar Mortgage LLC in Count VIII of the Complaint are **DISMISSED WITHOUT**

**PREJUDICE**. Accordingly, Defendant's request for the Court to dismiss these claims is **FOUND AS MOOT**.

3. Defendant's Motion to Dismiss Counts I, II, III, and VIII of Plaintiff's Complaint (Doc. 36) is **DENIED** in all other respects.

**DONE AND ORDERED** in Orlando, Florida on March 13, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties